UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LUIS ORTIZ,
    *Plaintiff*,

v.

STATE OF CONNECTICUT
DEPARTMENT OF TRANSPORTATION,
    *Defendant.*

No. 3:20-cv-922 (JAM)

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Luis Ortiz was a maintenance worker for the Connecticut Department of Transportation. In March 2019, he sued the Department in federal court, alleging racial discrimination. That lawsuit was later dismissed. Now, in this second lawsuit, he claims that the Department has retaliated against him for filing the first lawsuit, including by suspending him and denying him a pay raise.

The Department has moved for summary judgment. Because I conclude that there is no material dispute to show that the Department retaliated against Ortiz, I will grant the motion.

**BACKGROUND**

In March 2019, Ortiz sued the Department under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. He alleged that he had endured severe racial harassment at work. He also alleged that the Department had discriminated against him by giving him degrading tasks and denying him job training because of his race.[1] That lawsuit was dismissed in October 2019.[2]

This case is about what happened after he filed his first lawsuit. In the following months, Ortiz kept his job but frequently clashed with his bosses. In August 2019, for instance, the

---

[1] Doc. #35-2 at 1–5 (¶¶ 4–36); *Ortiz v. Remson et al.*, 3:19-cv-462-JCH (D. Conn. 2019).
[2] Doc. #33-2 at 4 (¶ 18).

1

Department decided to investigate whether Ortiz had shown up to work at the wrong location.[3] His boss Stephen Moran asked him to meet privately so that Moran could give him a formal notice of the investigation. But Ortiz refused to take the meeting, claiming that he did not have to meet with Moran without a union representative present.[4]

Eventually, Moran delivered the formal notice to Ortiz. But Ortiz decided to publicly mock it. He posted a copy of the notice to his locker with the words "Fake News" written on it.[5] Moran took the notice down, but Ortiz then put up a new note: "Whoever took down 'my' paper your mother is a man and your dad loves that about him. Fake News."[6]

Moran then took *that* note down, but Ortiz posted a third one, and so they went back and forth, with Ortiz posting five notes in total. (The others were: "Be a man not a punk do it in my face. You punk coward! Fake News"; "Yo Mama again!!! Fake News"; and "Keep it up not so tough guy. Fake News.").[7]

One business day after Ortiz posted the fifth note, the Department's human resources officer decided to investigate his behavior and put him on paid administrative leave.[8] The next day, she sent him a letter explaining that he had been suspended because of his "alleged escalating behavior."[9] As Ortiz now agrees, by "escalating behavior," she meant the notes.[10]

In October 2019, the Department formally investigated both Ortiz's posting the notes and his refusal to take the meeting with Moran.[11] It found that both times, he had violated the

---

[3] *Id.* at 4 (¶ 21).
[4] *Id.* at 6 (¶¶ 30–31).
[5] *Id.* at 8 (¶ 41).
[6] Doc. #33-3 at 207.
[7] *Id.* at 206–10.
[8] Doc. #33-2 at 9–10 (¶¶ 51, 56).
[9] Doc. #33-3 at 146.
[10] Doc. #33-2 at 10 (¶ 57).
[11] *Id.* at 14–15 (¶¶ 85, 88)

Department's code of conduct.[12] After the hearing, Ortiz stayed on his paid leave through 2019.[13] Even though this leave was paid, he claims, it hurt him financially because he lost out on opportunities to get overtime pay.[14]

While this was all happening, Ortiz also lost a pay raise. In September 2019, he received an "unsatisfactory" rating in his annual review.[15] According to his written review, he received this rating because he had been disciplined three times in March. This discipline was unrelated to his posting the notes on his locker.[16] Because of his unsatisfactory rating, he did not get a pay raise that he was otherwise due.[17]

In July 2020, Ortiz filed this lawsuit for Title VII retaliation against the Department. The Department has moved for summary judgment.

## DISCUSSION

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues but solely to decide if there are enough facts that remain in dispute to

---

[12] *Id*. at 15 (¶¶ 87, 89).
[13] *Id.* at 16 (¶ 92).
[14] Doc. #35-1 at 10 (¶ 7).
[15] Doc. #33-3 at 137.
[16] *Ibid*.
[17] *Id.* at 135.

warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*); *Pollard v. N.Y. Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).[18]

Under Title VII of the Civil Rights Act, an employer may not punish or retaliate against an employee because the employee "opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). Claims for retaliation under Title VII are analyzed at the summary judgment stage under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, a plaintiff must present evidence sufficient to permit a rational trier of fact to find (1) that he engaged in protected activity under Title VII—*i.e.*, that he complained of or otherwise opposed some form of discrimination forbidden by Title VII; (2) that the employer was aware of this activity; (3) that the employer took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse action. *See Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 844 (2d Cir. 2013). If the plaintiff meets this initial burden and the defendant then points to evidence of a legitimate, non-retaliatory reason for the challenged employment decision, the burden shifts back to the plaintiff to point to evidence that would suffice to permit a rational factfinder to conclude that the employer's explanation is incomplete or merely a pretext for impermissible retaliation. *Id.* at 845; *see also Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 157 (2d Cir. 2010). The evidence must be enough to create a genuine fact issue that the adverse actions would not have occurred but for the plaintiff's protected activity. *See Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338 (2013).

Ortiz's complaint alleged that he had endured a litany of adverse acts. When the Department moved to dismiss the complaint, I held that Ortiz's claim must be limited to the acts

---

[18] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

mentioned in paragraphs 42 to 47 of his complaint. I agreed that these acts, in aggregate, could plausibly support a retaliation claim.[19]

After discovery, however, the actual facts did not support most of the allegations in those paragraphs. For instance, Ortiz alleged that Moran had violated his rights under the union contract by asking him to meet without a union representative.[20] But Moran's request, it turns out, did not violate any union rules: under the contract, Ortiz had no right to a representative when he was merely getting notice of a future hearing.[21] Likewise, Ortiz alleged in the complaint that when the hearing finally happened, the Department had "no evidence of any kind" against him.[22] But, as he admitted during discovery, that was not true: there was plenty of evidence, including testimony from at least 13 witnesses.[23]

Next, Ortiz claimed that he received a harsher punishment for minor infractions than a "Caucasian employee [had received for] threaten[ing] to shoot a manager."[24] But that too is untrue: the co-worker that Ortiz had in mind had been given an *unpaid* suspension and lost nine months of salary.[25]

And finally, Ortiz alleged that Moran had asked him to show up for an interview on a vacation day.[26] While this allegation is true, it is misleading. When Moran had scheduled the interview, he had not known about the vacation day. When Moran found out about the conflict, he rescheduled the interview, and Ortiz took the vacation.[27]

---

[19] Doc. #21.
[20] Doc. #1 at 22 (¶ 43).
[21] Doc. #33-3 at 124–25.
[22] Doc. #1 at 23 (¶ 47).
[23] Doc. #33-2 at 14–16 (¶¶ 85–91)
[24] Doc. #1 at 22–23 (¶ 44).
[25] Doc. #33-2 at 17–18 (¶¶ 101–106).
[26] Doc. #1 at 22 (¶ 42).
[27] Doc. #33-2 at 6 (¶¶ 28–29).

Still, two of the events that Ortiz alleged in the complaint did really happen: he lost a pay raise, and he was suspended. I will assume for present purposes that Ortiz has satisfied his minimal burden to create at least a genuine fact issue over his *prima facie* case with respect to these two acts. Even so, the Department has advanced legitimate, nonretaliatory reasons for its actions, and Ortiz has failed to put forth any evidence showing that these reasons are pretexts.

As an initial matter, the Department has a compelling explanation for each adverse act. It put Ortiz on paid leave because it was looking into the notes he had posted on his locker. These notes were indisputably inappropriate, and there is ample evidence that they are what prompted the investigation. For example, the Department started the investigation within a week of the first note and just one business day after the last one. Moreover, once the investigation started, the Department was allowed under the union contract to place Ortiz on paid leave.[28]

The Department also has a conclusively persuasive explanation for denying Ortiz a pay raise. He rated "unsatisfactory" in his annual review, and under the union contract, "a single unsatisfactory rating … may be considered grounds for denial of [a] step [raise]."[29] Indeed, Ortiz also lost a pay raise when he received an unsatisfactory rating back in 2014.[30]

Nor is there any evidence that Ortiz's unsatisfactory rating was itself the retaliation: Ortiz received the rating because he had been disciplined three times that year—all *before* he sued the Department the first time in late March 2019. He even admits now that the Department was allowed to consider these incidents when deciding his annual rating.[31]

---

[28] Doc. #33-3 at 124 ("[During a noncriminal] investigation, an employee shall be placed on a paid leave of absence.").
[29] *Id.* at 123.
[30] *Id.* at 132.
[31] *Id.* at 12, 137.

In sum, the Department has put forth persuasive, well-documented, nonretaliatory explanations for its actions. To be sure, that alone would not entitle it to a summary judgment. Under the *McDonnell Douglas* framework, Ortiz gets a chance to show that these reasons were incomplete or pretextual. He has not done so.

To start, Ortiz proffers no telltale direct evidence of a retaliatory motive, at least none that is admissible. He claims that Moran told a union representative that Moran would block Ortiz's pay raise unless Ortiz dropped his lawsuit. This is inadmissible hearsay. Because Ortiz was not there, he may not testify about what Moran told the union representative. Fed. R. Evid. 801(c), 802; *see Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (hearsay rules apply at summary judgment). And Ortiz himself acknowledges that the representative denies that this conversation ever happened.[32] So Ortiz could not introduce the evidence through her either.

The other statements that Ortiz points to also do not show that the Department retaliated against him. First, he says that another supervisor, Lino Bruno, told him "during the time that [he] was filing [his] first lawsuit" that he "was not going to like how this ended."[33] But there is no evidence connecting Bruno to Ortiz's discipline. And second, Ortiz claims that before he sued the Department the first time, Moran told him that "people have tried this before and found themselves without a job."[34] But as Ortiz later admitted, he did not know what Moran meant by "this" and is not sure whether Moran was even talking about the impending lawsuit.[35] Plus, this vague statement does not match up with anything that happened later. Indeed, in the end, Moran did *not* end Ortiz's career; he merely (half a year later) denied Ortiz a pay raise for a reason

---

[32] Doc. #35–4 at 27–28.
[33] *Id.* at 148–49.
[34] *Id.* at 28, 146.
[35] *Id.* at 28–30.

endorsed by the union contract. No reasonable jury could find from this statement that the Department's acts were done out of retaliation.

Besides these direct statements, Ortiz also claims to have indirect evidence of retaliation. After he filed the first lawsuit, he says, he faced racial harassment and discrimination. He claims, for instance, that he was denied training given to white workers, was assigned degrading tasks, and had to endure racist jokes.[36] But these complaints are essentially the same ones that prompted his *first* lawsuit that was later dismissed. There is no evidence that they were *caused* by the suit.

Finally, Ortiz argues that a jury could find the Department's acts to be retaliatory because they happened shortly after he filed his first lawsuit. But "[t]emporal proximity alone is insufficient to defeat summary judgment at the pretext stage." *Zann Kwan*, 737 F.3d at 847.

In all, there is no genuine issue of fact to support Ortiz's claim that he was suspended and lost a pay raise in order to retaliate against him for filing his first lawsuit. I therefore conclude that no reasonable jury could find for Ortiz on his Title VII retaliation claim.

## CONCLUSION

The Department's motion for summary judgment (Doc. #17) is GRANTED. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 28th day of February 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[36] Doc. #35-1 at 10–11, 13–14 (¶¶ 8–9, 11, 13, 22–23, 28).